## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>EDGAR ALBERTO GUERRA PALOMARES,<br><br>                    Defendant. | **8:19CR66**<br><br>**FINDINGS AND<br>RECOMMENDATION** |

This matter is before the Court on the Motion to Suppress (Filing No. 27) filed by Defendant, Edgar Alberto Guerra Palomares.  Defendant filed a brief (Filing No. 28) in support of the motion and the government filed a brief (Filing No. 34) in opposition.

The Court held an evidentiary hearing on the motion on October 8, 2019.  Defendant was present with his attorney, Thomas Monaghan.  The government was represented by Assistant United States Attorney, Gregory D. Artis.  Seward County Sheriff Michael Vance testified on behalf of the government.  Exhibits 1 and 2 offered by the government were received by the Court without objection.  Exhibit 101 offered by Defendant was received by the Court over objection.  A transcript (TR.) of the hearing was prepared and filed on November 3, 2019.  (Filing No. 41).  The matter is now fully submitted to the Court.   For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

Sheriff Vance testified that, in the early afternoon on October 12, 2018, he was running stationary radar on Interstate 80 in Nebraska and looking for a silver Infiniti with a Nebraska tag, pursuant to information from the Drug Enforcement Administration ("DEA") that the Infiniti was transporting methamphetamine.  (TR. 8-10).  Sheriff Vance observed the Infiniti driving in the left passing lane at approximately 72 MPH in a 75 MPH zone, with five to six vehicles traveling behind it.  (TR. 10).  When the Infiniti passed Sheriff Vance's position, he noticed the Infiniti had a license plate bracket that obstructed about 80 percent of the word "Nebraska" such that the word was not readable, although he knew it was a Nebraska plate.  (TR. 12, 15-16, 40-41).  Exhibit 2 depicts the back view of the Infiniti and its license plate.  Sheriff Vance pulled out of the median to catch up to the Infiniti and initiated a traffic stop approximately nine miles later for impeding traffic and for having an obstructed license plate.  (TR. 11-12, 15-16, 30-31).

Sheriff Vance approached the passenger side of the Infiniti and observed a large quantity of air freshener sprinkled all over the inside of the otherwise clean vehicle, which he testified in his experience can be an indication of an attempt to mask the odor of contraband. (TR. 17). Sheriff Vance made contact with the driver, later identified as Defendant, and asked for his license and registration. Defendant spoke Spanish but appeared to understand Sheriff Vance's instructions. Defendant produced a Mexico identification card and the vehicle's registration, but did not have a driver's license. (TR. 18-19). The vehicle was registered to a female. In Sheriff Vance's experience, use of a third-party vehicle can also be an indication of narcotics trafficking. (TR. 20). Sheriff Vance asked Defendant to sit in Vance's vehicle while he ran his checks through dispatch. During this time, Defendant used his cell phone to call his girlfriend. Defendant's girlfriend informed Sheriff Vance that she spoke English and agreed to translate for Defendant, and told Sheriff Vance that the Infiniti was registered to her. (TR. 20-21). During the stop, Sheriff Vance learned Defendant's license was suspended. (TR. 22).

Two other officers arrived a few minutes after Sheriff Vance initiated the stop to assist him. The canine officer deployed his drug canine around the Infiniti while Sheriff Vance processed Defendant's warning. (TR. 23-24). Sheriff Vance learned from dispatch that Defendant had a prior criminal record involving narcotics. (TR. 42). The drug canine indicated to the odor of narcotics in the Infiniti, and officers recovered methamphetamine from their subsequent search. (TR. 25-26). Defendant filed the instant motion to suppress all evidence obtained from the traffic stop, arguing that the stop was not supported by probable cause or reasonable suspicion that a traffic violation occurred, and that Sheriff Vance prolonged the traffic stop without reasonable suspicion of criminal activity, in violation of the Fourth Amendment.[1]

## ANALYSIS

### A.     Initial Stop

Defendant argues that Sheriff Vance did not have probable cause to initiate the stop for the traffic offenses of impeding traffic or for having an obstructed license plate, and was merely looking for any reason to stop Defendant because of the DEA tip. (TR. 53-54).

---

[1] Defendant initially argued that there is no evidence that the drug canine was reliable and therefore officers did not have probable cause to search the Infiniti. (Filing No. 27; Filing No. 28 at p. 4). At the hearing, Defense counsel clarified he was no longer contesting the certification or reliability of the canine. (TR. 3).

"A traffic stop constitutes a seizure and must be supported by probable cause or reasonable suspicion." *United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013). It is well established that "if police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle." *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016)(citing *United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012)). "This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007)(internal quotations omitted). Probable cause for a traffic stop exists "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." *Gordon*, 741 F.3d at 876 (alteration in original) (quoting *United States Coney*, 456 F.3d 850, 856 (8th Cir. 2006)). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *Fuehrer*, 844 F.3d at 772 (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)). Therefore, if Sheriff Vance had an objectively reasonable basis to believe Defendant had breached a traffic law, Sheriff Vance was permitted to initiate the stop regardless of his subjective motivations.

At the hearing, the government did not argue Sheriff Vance had probable cause to initiate the stop for impeding traffic, but instead relied on the license plate violation to support the stop. (TR. 49-50, 52-53). Nebraska law provides:

> All letters, numbers, printing, writing, and other identification marks upon [vehicles' license plates] shall be kept clear and distinct and free from grease, dust, or other blurring matter, so that they shall be plainly visible at all times during daylight and under artificial light in the nighttime.

Neb. Rev. Stat. § 60-399(2). When considering whether a license plate's letters and numbers are "plainly visible," "a standard of readability has been the standard applied by Nebraska courts." *United States v. $45,000.00 in U.S. Currency*, 749 F.3d 709, 716 (8th Cir. 2014)(finding no probable cause to believe the statute had been violated where officer testified he could read the partially obscured state name prior to the stop from within 100 feet).

In this case, Sheriff Vance testified that the plastic bracket around the Infiniti's license plate covered "probably 80 percent of the state name," such that he could not read the word "Nebraska" from a little less than one car length away, and that the lettering on the plate was not "plainly visible." Sheriff Vance testified that, had the plate not had the bracket around it, he would expect to be able to read the word "Nebraska" at that distance, but could not. (TR. 15-16). Exhibits

3

1 and 2 do not contradict this testimony.[2]  Although Sheriff Vance testified he knew it was a Nebraska license plate, TR. 40-41, 48, the question is not whether Sheriff Vance knew what state the license plate was from, but whether an objectively reasonable law-enforcement officer could, at a minimum, reasonably suspect Defendant's partially obstructed plate violated Neb Rev. Stat. § 60-399(2).  Based on Sheriff Vance's uncontroverted testimony, the undersigned finds that a reasonable officer could reach that conclusion.  Accordingly, the stop of Defendant was permissible under the Fourth Amendment.

### B.    Detention

Defendant next argues that Sheriff Vance did not have reasonable suspicion of criminal activity to prolong Defendant's detention after the stop, and that therefore the canine indication supporting probable cause for the search and any evidence seized as a result must be suppressed.

First, review of the video of the traffic stop and Sheriff Vance's testimony shows that the canine officer arrived and walked the canine around the exterior of the vehicle within minutes after Sheriff Vance initiated the stop, while Sheriff Vance was processing Defendant's traffic warning and running checks through dispatch.  See Ex. 1; TR. 25-26.  The drug canine indicated to the odor of narcotics before Sheriff Vance completed the "mission" of the initial stop.  Therefore, the use of the drug detection canine in this case did not extend an otherwise-completed traffic stop and does not implicate the Fourth Amendment.  See *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)("[T]he use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests."); *cf. Rodriguez v. United States*, 135 S. Ct. 1609, 1615-16 (2015)(requiring reasonable suspicion of criminal activity to extend an otherwise-completed traffic stop to conduct a dog sniff).  The drug canine's indication gave rise to probable cause to search the Infiniti for narcotics.  See *United States v. Tuton*, 893 F.3d 562, 570 (8th Cir. 2018)("Assuming that the dog is reliable, a dog sniff resulting in an alert on a . . . car . . standing alone, gives an officer probable cause to believe that there are drugs present").

Moreover, the separate narcotics investigation was supported by reasonable suspicion developed during the course of the stop.  Reasonable suspicion requires "particularized, objective

---

[2] In fact, neither party offered evidence providing the Court with a clear view of the plastic bracket and the license plate as it appeared at the time of the traffic stop.  While counsel disagree as to whether "Nebraska" was readable or not, TR. 54, the Court has no clear visual of the license plate to resolve the dispute.  Therefore, the Court is left with nothing but Sheriff's Vance's testimony to rely upon.

facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007)(quotation omitted). "Whether a particular detention is reasonable is a fact-intensive question, measured in objective terms by examining the totality of the circumstances." *United States v. Englehart*, 811 F.3d 1034, 1041 (8th Cir. 2016)(citing *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013)).

In this case, law enforcement officers were tracking the Infiniti based upon a tip from the DEA that the Infiniti was transporting methamphetamine. (TR. 8-9; Ex. 101 at pp. 3-4). Sheriff Vance testified that when he first approached the Infiniti, he saw air freshener sprinkled all over the interior of the otherwise clean looking vehicle, which he testified in his experience can be an attempt to mask the odor of contraband. Sheriff Vance also took note of Defendant's nervousness even after Defendant was told he would receive a warning for the traffic violation. (TR. 21). See *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994)(officer's observations of a masking odor and a driver's extreme nervousness contributed to the officer's reasonable suspicion). Defendant did not have a driver's license and Sheriff Vance learned from dispatch that Defendant had a previous criminal record involving narcotics. The Infiniti Defendant was driving was registered to a third party, which Sheriff Vance testified can also be an indication of narcotics trafficking. (TR. 20). Under the totality of the circumstances, Sheriff Vance had reasonable suspicion of criminal activity justifying the expansion of the investigation after the initial stop. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress (Filing No. 27) be denied.

Dated this 21st day of November, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.